### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RALPH W. DANIELS, an individual, ) | |
| DAVID D. BINGHAM, an individual, ) | |
| and ) | |
| JASON L. ADAMS, an individual, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-14-91-RAW |
| ) | |
| TANMAR RENTALS, L.L.C., a foreign ) | |
| corporation, and ) | |
| RANDY CORUM, an individual, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COME NOW the Plaintiffs, Ralph W. Daniels ("Daniels"), David D. Bingham ("Bingham") and Jason L. Adams ("Adams"), and bring this action against Defendant TanMar Rentals, L.L.C., ("TanMar") and Randy Corum ("Corum"). All Plaintiffs seek redress for unlawful workplace sexual harassment and unlawful retaliation in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988 ("Section 1988") and for intentional infliction of emotional distress. Plaintiff Daniels and Plaintiff Bingham also seek redress for wrongful discharge in violation of an Oklahoma public policy and intentional interference with contractual relations. In support thereof, Plaintiffs allege and state as follows:

## THE PARTIES

1. At all times mentioned herein, Plaintiff Daniels was a resident of the City of Ada, Pontotoc County, State of Oklahoma. Plaintiff Daniels currently is a resident of the City of Napavine, Lewis County, State of Washington.

2. At all times mentioned herein, Plaintiff Bingham was and currently is a resident of the City of Stonewall, Pontotoc County, State of Oklahoma.

3. At all times mentioned herein, Plaintiff Adams was and currently is a resident of the City of Ada, Pontotoc County, State of Oklahoma.

4. Defendant TanMar is a foreign limited liability company incorporated in the State of Louisiana. Its registered agent for service of process in Oklahoma is the Oklahoma Secretary of State, 2300 North Lincoln Boulevard, Suite 101, Oklahoma City, Oklahoma 73105-4897.

5. Defendant Corum is an individual believed to reside in the City of Ada, Pontotoc County, State of Oklahoma.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over Plaintiffs' Civil Rights Act claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

7. This Court has supplemental jurisdiction of Plaintiffs' state law claims for wrongful discharge in violation of an Oklahoma public policy, intentional interference with contractual relations, and intentional infliction of emotional distress pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in the Eastern District of Oklahoma pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 as all acts and omissions of Defendants complained of occurred in Pontotoc County, Oklahoma or other adjacent counties in the Eastern District of Oklahoma.

## CONDITIONS PRECEDENT

9. Plaintiff Daniels timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in December 2012. Plaintiff Bingham timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in October 2012. Plaintiff Adams timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in January 2013. All Plaintiffs were issued notices of right to sue on December 12, 2013, and this Complaint was filed within ninety (90) days of Plaintiffs' receipt of such notices.

10. Plaintiffs have exhausted their administrative remedies under federal law.

## GENERAL ALLEGATIONS

11. All Plaintiffs and Defendant Corum are males.

12. All Plaintiffs were employed by Defendant TanMar as commercial drivers as of February 2012 at its Ada, Oklahoma location.

13. Defendant Corum began work in February 2012 as assistant manager at Defendant TanMar's Ada location, where he was responsible for overseeing a large portion of the approximately fifty employees at the Ada location. Defendant Corum had authority over job assignments, including assigning Plaintiff Daniels to work in the office after he had surgery and authorizing him to work overtime. Defendant Corum also made

3

schedules for commercial drivers, including assigning Plaintiff Adams to drive on Sundays, and exercised oversight with respect to drivers' paperwork and time cards, including assigning Plaintiff Daniels, as part of his office duties, to monitor the time clock to keep track of when drivers clocked in and out.  Finally, Defendant Corum arranged to have Plaintiff Bingham work for him – first in the office and then transferring him to Defendant Corum's supervision as a driver.

14.     As soon as Defendant Corum began working at Defendant TanMar's Ada location, he began to subject employees to a constant barrage of profane, explicit, and offensive sexual remarks as well as simulation of sexual activities such as masturbatory gestures.  Many of these remarks and gestures would be made during morning meetings (attended by all Plaintiffs) and also throughout the work day when employees (including Plaintiffs) would come into the office.  Common remarks included calling various employees "faggots" and asking them if they "went both ways" (i.e., were bisexual or homosexual).

15.     Other remarks by Defendant Corum included vulgar statements about "packing peanut butter bars" (a sexual reference); "Hey when you were out there, did you give the company man a reach around or did you suck his dick?  Did you swallow?  Did you take it up the ass?  We've got to take care of those guys;" and frequent comments about "dicks," "swallowing," and "taking it up the ass."

16.     At morning meetings, Tommy Garner, an employee of Defendant TanMar, would also subject his co-workers to a number of sexually explicit remarks and gestures including masturbatory hand gestures.

4

17. Mr. Garner also touched Plaintiff Adams on a number of occasions including hugging and trying to kiss him and touching his nipples. Plaintiff Adams complained to Manager Brandon Miller on more than one occasion, but Mr. Garner's unwanted physical advances continued unchecked and Mr. Garner was permitted to verbally berate Plaintiff Adams for complaining.

18. Manager Brandon Miller would often attend the morning meetings. Statewide supervisor Warren Dobbs also attended many morning meetings. Both Mr. Miller and Mr. Dobbs witnessed and were well aware of Defendant Corum's and Mr. Garner's sexually offensive conduct during these meetings and at other times but did nothing to prevent or stop it. In addition, Mr. Dobbs would frequently touch and massage Plaintiff Adam's shoulders in spite of Plaintiff Adam's objections to this conduct.

19. In March 2012, Plaintiff Bingham was injured in an accident while driving a truck for Defendant TanMar. He was assigned to light duty in the Ada location's office. During April 2012 and May 2012, Plaintiff Bingham worked as assistant to one of the front office secretaries. Then, in May 2012, Plaintiff Bingham was assigned to work directly for Defendant Corum as his assistant. Plaintiff Bingham continued in this capacity until August 2012, when he was returned to driving. However, he remained under Defendant Corum's direct supervision.

20. While Plaintiff Bingham worked in the office, Defendant Corum constantly made sexually derogatory remarks targeted at Plaintiff Bingham because Defendant Corum believed that Plaintiff Bingham had a friend that was gay. Defendant Corum also constantly suggested to Plaintiff Bingham that he date various female employees of

5

Defendant TanMar.  When Plaintiff Bingham objected, Defendant Corum stated that Plaintiff Bingham was "gay."  Other remarks made by Defendant Corum to Plaintiff Bingham included:  "You mean you've got a friend that's gay?"; "I bet you like holding it in your mouth until the swelling goes down;" "I hear you like bending over in front of the guys;" "I know you're not gay but I thought you were;" "goober smoocher;" "fudge packer;" and "Jeff [Plaintiff's brother] and David are the gay pride of TanMar."

21. Plaintiff Bingham complained to Manager Brandon Miller about Defendant Corum's comments directed at him more than once.  Manager Brandon Miller spoke to Defendant Corum about the comments on one occasion.  Defendant Corum stopped making the comments for a few days and then started again.  After that, the comments did not stop as long as Plaintiff Bingham worked in the office with Defendant Corum.

22. In June 2012, Plaintiff Daniels had hernia surgery and was assigned by Defendant Corum to assist him in the office.  During Plaintiff Daniels' time working in the office, Defendant Corum made a number of profane and offensive sexual remarks in Plaintiff Daniels' presence, including many of the above-mentioned remarks to Plaintiff Bingham.  Such remarks also included:  "I sleep naked with my wife" (said on at least two occasions); "I got naked and climbed in bed with my son" (remark made to a mixed-gender group of employees including Chrystal Powell, Lisa Brashears, and Plaintiff); multiple comments about employees resembling the cast of Brokeback Mountain; remarks about allegedly catching employee Jayme Gore in a sexual situation with co-worker Chrystal Powell ("Jayme's dick was hard . . . you could see it in his jeans . . . they were sweaty"); "Did you bend over for them or did they bend over for you?" and "Did

6

you give them a reach-around?" (regularly asked of drivers returning to the office from well sites); "Did you leave anything on the sheets?" "Did you wipe off on the drapes or did you just use the sheets?" "Did you jack each other off?" "Did you cum in his mouth?" "Did you butt fuck each other?" "Did you play with each other?" and "He doesn't want to work with him or sleep in the same hotel because his dick is not big enough." (regularly asked of drivers returning from over-night business trips).

23. When Defendant Corum would make sexually explicit, offensive and vulgar comments in Plaintiff Daniels' presence, Plaintiff Daniels would express disapproval or leave the room. Defendant Corum would typically order Plaintiff Daniels to return to the room and/or would laugh off his concerns. On one occasion, Defendant Corum stated to Plaintiff Daniels, who was outspoken about his Christian faith, that Defendant Corum's father was a Christian but that he used bad language so Plaintiff Daniels should not complain about Defendant Corum's obscenity and vulgarity.

24. In August 2012, Plaintiff Daniels was forced to stand while working due to recovery from surgery. During this time, Defendant Corum, who was seated behind Plaintiff Daniels' desk, photographed Plaintiff's posterior with his phone. Defendant Corum texted this picture to a number of employees of Defendant TanMar, including Tim Clemmons.

25. During the time that Plaintiff Daniels worked in the office with Defendant Corum, he also expressed concerns about violations of federal Department of Transportation hours-of-service recordkeeping regulations by employees of Defendant TanMar. Defendant Corum regularly rebuffed Plaintiff Daniels' concerns about record-

keeping violations. Defendant Corum warned Plaintiff Daniels that at his previous employer, Defendant Corum expected all of his subordinates to comply with his directives regarding falsified hours-of-service records.

26. During the time that Plaintiff Daniels worked in the office with Defendant Corum, a conversation took place in which Defendant Corum asked Melissa Bump, an employee of Defendant TanMar and a former member of the United States military what the military did with "tattletales." Ms. Bump replied that the military "took care of tattletales." Defendant Corum then stated to Plaintiff Daniels that "tattletales" at Defendant TanMar would be fired. Defendant Corum also stated that if any employee raised concerns or complaints to Maurice Bledsoe, executive of Defendant TanMar, that Mr. Bledsoe had ordered the employee to be fired. Defendant Corum also warned Plaintiff Bingham not to make complaints to manager Brandon Miller and other higher-ranked employees of Defendant TanMar. Manager Brandon Miller also made similar statements in a number of morning meetings – advising employees that raising concerns or complaints to higher ranking employees would result in immediate termination. These comments made employees feel highly threatened and intimidated about raising complaints and concerns of any nature.

27. In October 2012, Manager Brandon Miller was fired by Defendant TanMar and Defendant Corum was promoted to manager of the Ada location. Shortly thereafter, Tommy Garner was promoted by Defendant Corum to assistant manager. At the time of his departure, Mr. Miller warned Plaintiff Bingham that he was on Defendant Corum's "hit list" and that Defendant Corum had told Mr. Miller that if he was ever promoted to

8

manager that he would fire Plaintiff Daniels, Plaintiff Bingham, Plaintiff Adams, Mark Brashears, and Justin Brashears (Mark's son).

28.     On or about October 11, 2012, a few days after Defendant Corum's promotion to manager, Plaintiff Bingham attended a meeting at which David Bledsoe, one of the owners of Defendant TanMar, ordered employees not to drive vehicles that would not pass a federal Department of Transportation inspection.  Employees of Defendant TanMar were issued "stop work authority cards" which authorized them to refuse to drive vehicles that were out of compliance.  Plaintiff Bingham exercised this right in the presence of Defendant Corum and David Bledsoe because of issues with the truck he was assigned to drive that day.  David Bledsoe directed Defendant Corum to assign Plaintiff Bingham to work in the yard that day.

29.     The next day, Plaintiff Bingham raised concerns about a different truck that he was assigned to drive because it had a flat tire but Defendant Corum ordered him to drive it anyway.  Plaintiff Bingham drove the truck from Ada, Oklahoma to Stroud, Oklahoma and the tire went flat.  Plaintiff Bingham called Defendant Corum to report the break-down.  Defendant Corum advised Plaintiff Bingham over the phone that he would have to work during his day off to make up time lost due to the break-down.  Plaintiff Bingham objected to being assigned to work on the weekend and Defendant Corum stated that he was fired for earlier "arguing" with Defendant Corum about the truck.  David Bledsoe of Defendant TanMar was present at the Ada location on the day that Plaintiff Bingham was fired.

30. Shortly after Defendant Corum was promoted to manager, Plaintiff Daniels expressed interest in being promoted to assistant manager (to replace Defendant Corum) or to a newly-created quality control position. He was denied both promotions by Defendant Corum and was instead assigned to return to driving a truck. Plaintiff Adams similarly expressed interest in the quality control position and was also denied.

31. On or about October 23, 2012, Plaintiff Daniels gave two week's notice to Defendant TanMar.

32. On October 25, 2012, Plaintiff Daniels sent an e-mail to Maurice Bledsoe, executive of Defendant TanMar. In the e-mail he stated concerns with respect to dishonest recordkeeping by Defendant Corum and other employees of Defendant TanMar. Such records included both forged time records and inaccurate hours-of-service records by drivers. Within a day or two of sending this e-mail, Plaintiff Daniels was fired by Defendant Corum.

33. In February 2013, Plaintiff Adams resigned from his employment with Defendant TanMar. Plaintiff Adams was forced, over his objections, to drive a truck that was over weight limits. Plaintiff Adams received a ticket and was written up by Defendant TanMar. Soon afterwards, Plaintiff Adams was suspended from work for three days. During this time, he procured other employment and resigned.

## COUNT I – Unlawful Workplace Sexual Harassment/Gender Discrimination

34. Plaintiffs restate and incorporate by reference Paragraphs 1 through 33 of this Complaint.

35. The conduct of Defendant Corum and Tommy Garner was sufficiently severe and pervasive to constitute a hostile work environment with respect to Plaintiffs and constituted unlawful gender discrimination. Plaintiffs were subjected to constant demeaning and offensive obscenities and vulgarities as well as offensive conduct by Defendant Corum and Tommy Garner in spite of Plaintiffs' repeated objections to such comments and conduct by Defendant Corum and Tommy Garner.

36. Plaintiffs, throughout their employment, complained about the conduct of Corum and Garner to several management employees of TanMar, including, but not limited to Corum himself, Brandon Miller, Warren Dobbs, and corporate personnel from Louisiana, who were all aware of the conduct of Defendant Corum and Tommy Garner and yet neither Dobbs or Miller nor any other official of Defendant TanMar took adequate or reasonable steps to prevent or stop it. Indeed, upon Brandon Miller's departure, Defendant Corum and Tommy Garner were both <u>promoted</u> by Defendant TanMar.

37. At all times while he was an assistant manager, Defendant Corum was a supervisor of all Plaintiffs, given his primary role in setting their schedules and work assignments and direct oversight of their hours-of-service and time records.

38. Employees at Defendant TanMar's Ada, Oklahoma location were regularly intimidated and coerced not to report complaints to higher-ranking officials in the company. This included threats of termination for making complaints.

39. Therefore, Plaintiffs are entitled to recover damages from Defendant TanMar, including but not limited to lost income, past and future, emotional distress and

mental anguish, injury to reputation, humiliation, embarrassment and loss of enjoyment of life, and other compensatory damages.

40. Because the actions of Defendant TanMar were intentional, willful, wanton, or, at the least, in reckless disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive damages under all applicable laws.

## **COUNT II – Unlawful Retaliation**

41. Plaintiffs restate and incorporate by reference Paragraphs 1 through 40 of this Complaint.

42. Each Plaintiff engaged in protected activity under Title VII when each Plaintiff reported and complained about the sexual harassment of Defendant Corum and Tommy Garner to Manager Brandon Miller, Dobbs, to Defendant Corum, and other managerial level employees of TanMar.

43. Defendant TanMar engaged in unlawful retaliation with respect to each Plaintiff, as set forth below.

44. With respect to Plaintiff Daniels, Defendant TanMar's supervisory employee, Defendant Corum, retaliated against Plaintiff Daniels by denying him promotions to assistant manager and quality control and by terminating him within days of Defendant Corum's promotion to manager. Any alternative purported reason proffered by Defendant TanMar is merely a pretext for unlawful discrimination and a sham, because there was no legitimate, good faith basis or reason to not promote and/or to terminate Plaintiff. Rather, Plaintiff was not promoted and was terminated by

Defendant Corum because of his repeated objections to Defendant Corum's sexually harassing conduct, which was protected activity under Title VII.

45. With respect to Plaintiff Bingham, Defendant TanMar's supervisory employee, Defendant Corum, retaliated against Plaintiff Bingham by terminating him within days of Defendant Corum's promotion to manager. Any alternative purported reason proffered by Defendant TanMar, such as the suggestion that Plaintiff Bingham was terminated for "arguing," is merely a pretext for unlawful discrimination and a sham, because there was no legitimate, good faith basis or reason to terminate Plaintiff. Rather, Plaintiff was terminated by Defendant Corum because of his repeated objections to Defendant Corum's and Tommy Garner's sexually harassing conduct, which was protected activity under Title VII.

46. With respect to Plaintiff Adams, Defendant TanMar's supervisory employee, Defendant Corum, retaliated against Plaintiff Adams by denying him a promotion to quality control within days of Defendant Corum's promotion to manager. Any alternative purported reason proffered by Defendant TanMar is merely a pretext for unlawful discrimination and a sham, because there was no legitimate, good faith basis or reason to not to promote Plaintiff. Rather, Plaintiff was not promoted by Defendant Corum because of his repeated objections to Defendant Corum's sexually harassing conduct, which was protected activity under Title VII.

47. Therefore, Plaintiffs are entitled to recover damages from Defendant TanMar, including but not limited to lost income, past and future, emotional distress and

mental anguish, injury to reputation, humiliation, embarrassment and loss of enjoyment of life, and other compensatory damages.

48. Because the actions of the Defendant were intentional, willful, wanton, or, at the least, in reckless disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive damages under all applicable laws.

## **COUNT III – Wrongful Discharge in Violation of an Oklahoma Public Policy**

49. Plaintiffs restate and incorporate by reference Paragraphs 1 through 48 of this Complaint.

50. Plaintiff Daniels and Plaintiff Bingham were discharged in whole or in part in retaliation for said Plaintiffs' internal complaints regarding federal Department of Transportation regulatory violations.

51. The Federal Motor Carrier Safety Administration, a division of the United States Department of Transportation, regulates the trucking industry in the United States. In Oklahoma, the Commissioner of Public Safety is authorized to "adopt by reference and enforce all or any portion of the federal motor carrier safety regulations . . . of the United States Department of Transportation[.]"  47 Okla. Stat. § 230.4(2).  The Oklahoma Commissioner of Public Safety has adopted many such transportation regulations in the Oklahoma Administrative Code.

52. In *Burk v. K-Mart Corp.*, the Oklahoma Supreme Court held that there is a "limited public policy exception to the terminable-at-will rule as an actionable tort claim in cases in which the discharge is contrary to a clear mandate of public policy."  1989 OK 22, ¶ 22.  The Oklahoma Supreme Court later applied *Burk* in the transportation

14

regulation context, when it held: "To allow employers to dismiss employees who refuse to drive vehicles not conforming to statutory mandates of safety equipment and operation obviously contravenes this state's deeply rooted interest and public policy commitment to making its highways as safe as possible." *Todd v. Frank's Tong Service, Inc.*, 1989 OK 121, ¶ 12.

53. The Oklahoma Supreme Court has also held that "Oklahoma law protects both internal and external reporting of whistle-blowers who establish a sufficient public policy violation from retaliatory discharge." *Barker v. State Ins. Fund*, 2001 OK 94, ¶16.

54. By discharging Plaintiffs in whole or in part in retaliation for Plaintiffs' objections to Defendant TanMar's federal Department of Transportation regulatory violations, Defendant TanMar acted contrary to a clear mandate of public policy.

55. As a direct and proximate result of Defendant TanMar's actions, Plaintiff Daniels and Plaintiff Bingham have suffered actual and consequential damages including lost wages, benefits, and other damages. Defendant TanMar's actions were intentional, reckless, and wanton such as to entitle said Plaintiffs to punitive damages.

## **COUNT IV – Intentional Interference with Contractual Relations**

56. Plaintiffs restate and incorporate by reference Paragraphs 1 through 55 of this Complaint.

57. By engaging in the above actions alleged in this Complaint and by contributing to the termination of Plaintiff Daniels and Plaintiff Bingham, Defendant Corum engaged in unlawful, intentional, and malicious acts to improperly interfere with

said Plaintiffs' employment relationship with Defendant TanMar. Such actions were neither justified, privileged, nor excusable.

58. By engaging in the above actions alleged in this Petition, Defendant Corum acted in bad faith and contrary to the interests of his employer, Defendant TanMar, in unlawfully and tortuously interfering with the employment relationship that existed between Plaintiff Daniels, Plaintiff Bingham and Defendant TanMar. In so doing, Defendant Corum stepped outside of his official capacity as management employee of Defendant TanMar, and assumed the role of an independent third party vis-à-vis the employment relationship between Plaintiffs and Defendant TanMar, thereby exposing himself to individual liability pursuant to *Fulton v. People Lease Corp.*, 2010 OK CIV APP 84, ¶ 38 (citing *Marten v. Johnson*, 1998 OK 127, ¶ 32).

59. As a direct and proximate result of Defendant Corum's actions, Plaintiff Daniels and Plaintiff Bingham have suffered actual and consequential damages including lost wages, benefits, and other damages. Defendant Corum's actions were intentional, reckless, and wanton such as to entitle said Plaintiffs to punitive damages.

### COUNT V – Intentional Infliction of Emotional Distress

60. Plaintiffs restate and incorporate by reference Paragraphs 1 through 59 of this Complaint.

61. The unlawful actions of Defendant TanMar, and Defendant Corum were totally extreme, outrageous, and beyond all bounds of decency in a civilized society. As a result of the conduct of the Defendants, all Plaintiffs suffered extreme physical and

emotional distress, anxiety, and loss of enjoyment of life, which emotional distress was and has been severe and for which the Defendants are liable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests judgment against Defendants as follows:

    A.    Actual and compensatory damages, and any other remedy, under Title VII and 42 U.S.C. § 1981a and under Oklahoma common law in amounts to be proven at trial;

    B.    For interest on such damages;

    C.    For costs, including expert witness fees, and attorney fees pursuant to Title VII and Section 1988;

    D.    Punitive damages under Title VII and Section 1981a and under Oklahoma statutory and common law for Defendant's intentional, reckless and/or wanton discrimination and retaliatory conduct;

    E.    For such other relief as this Court deems equitable and appropriate or allowed by law.

    Respectfully submitted,

    *s/Blake Sonne*
    Blake Sonne, OBA# 20341
    P.O. Box 667
    Norman, OK  73070
    (405) 664-2919
    (405) 872-8897 (fax)
    **ATTORNEY FOR PLAINTIFFS**

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**